UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIO FEDERICI, et al., | Case No.: C 09-4025 PVT |
| Plaintiffs, | **ORDER SETTING DEADLINE FOR CROSS-COMPLAINANTS JESSE AND LUPITA MONROY TO RESPOND TO FDIC'S SUPPLEMENTAL BRIEFING; AND SCHEDULING FURTHER HEARING** |
| v. | |
| JESSE MONROY, et al., | |
| Defendants. | |
| AND RELATED THIRD PARTY CLAIMS | |

On January 12, 2010, the parties appeared before Magistrate Judge Patricia V. Trumbull for hearing on the motion to dismiss brought by the Cross-Defendant[1] Federal Deposit Insurance Corporation ("FDIC").[2] After the hearing, the court twice solicited supplemental briefing to address the complex issues raised by this case. In its most recent supplemental brief, the FDIC notes that California's "special benefit" doctrine requires the Monroys to show they have been damaged in an

---

[1] The Monroys' pleading against the banking entities is technically a Third Party Complaint. However, to avoid confusion the court will refer to it as a "Cross-Complaint," as that is the designation used by the parties.

[2] The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

amount exceeding the $475,000 from the Washington Mutual loan to Plaintiff Federici (the "WaMu/Federici Loan") that was used for their benefit and/or paid out to Lupita Monroy, before any claims they otherwise have against the banks and/or the FDIC are sufficiently "ripe" to confer subject matter jurisdiction on this court. The court finds it appropriate to solicit a response to this argument from the Monroys. Therefore,

IT IS HEREBY ORDERED that, no later than March 2, 2010, the Monroys shall file a response to the FDIC's most recent supplemental briefing (docket no. 57), along with a declaration attaching a copy of the "Final Statement" from the escrow for the loan from Federici to Lupita Leal Benavides (aka Lupita Monroy) (the "Federici/Benavides Loan"), which corresponds to "Borrower's Estimated Settlement Statement" bearing File No. 4101-2423622 (*see* Exh. C to the Declaration of Lupita Monroy re Supplemental Briefing re Damages (the "Lupita Monroy Decl."), filed herein on February 16, 2010 at docket no. 59).[3] Further, if that Final Statement shows the payoff of an existing loan, but does not clearly identify *what* loan was actually paid off, the Monroys shall also submit documentation that provides such information.[4]

IT IS FURTHER ORDERED that a further hearing on this motion will be held at 10:00 a.m.

---

[3] The Monroys have submitted both the "Borrower's Estimated Settlement Statement" and the "Final Statement" for the escrow for the WaMu/Federici Loan, but they submitted only the "Borrower's Estimated Settlement Statement" for the Federici/Benavides Loan. Thus, the Monroys have shown that $475,000 was actually disbursed from the WaMu/Federici Loan escrow to "Fund Loan for 657 Stanford Avenue, RWC" (*see* Exh. B to the Lupita Monroy Decl.). But they have only shown that it was *anticipated* that $457,000 would be disbursed from the Federici/Benavides Loan to New Century Mortgage to pay off an unidentified loan (*see* Exh. C to the Lupita Monroy Decl.). Of note, the Borrower's Estimated Settlement Statement for the WaMu/Federici Loan escrow originally indicated that $457,000 would be disbursed to New Century Mortgage to payoff a loan for the Redwood City Property, rather than the higher amount being transferred to a new escrow for the Federici/Benavides Loan. This significant change between the estimate and the final statement for the first loan shows that the estimate for the second loan is not necessarily a reliable showing with regard to how the money was ultimately distributed.

[4] Ms. Monroy's declaration testimony on this point is equivocal at best, and conflicts at least in part with the indication in the "Borrower's Estimated Settlement Statement" that $14,494.90 of the loan proceeds from the Federici/Benavides Loan would be disbursed directly to her in cash. A stronger showing of how the money was actually distributed is necessary for the court's consideration of whether the Monroys financially benefitted more than they were damaged by the banks' alleged mishandling of the transaction. Particularly in light of the fact that the Federici/Benavides Loan occurred five months *after* Ms. Monroy obtained the grant deed to the Redwood City Property, and in light of Plaintiff's allegation (at ¶ 54.b. of his complaint), incorporated by the Monroys into their cross-complaint (at ¶ 17), that the Monroys needed money from the loan to retain title to real property in *Menlo Park*.

on March 9, 2010.

Dated: *2/22/10*

PATRICIA V. TRUMBULL
United States Magistrate Judge